UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------
TATYANA IVANKOVSKAYA,

            Plaintiff,

       - against -

METROPOLITAN TRANSPORTATION
AUTHORITY BUS COMPANY,

            Defendant.
---------------------------------------------------------------

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ AUG 03 2017 ★
BROOKLYN OFFICE

**DECISION AND ORDER**

15-cv-5727 (AMD) (MDG)

ANN DONNELLY, District Judge.

The plaintiff, an employee of the Metropolitan Transportation Authority ("MTA") Bus Company, alleges that the MTA Bus Company violated the Americans with Disabilities Act ("ADA") by discriminating against her on the basis of her disability, failing to accommodate her disability, subjecting her to a hostile work environment, and suspending her without pay. The defendant moves to dismiss the plaintiff's amended complaint. For the reasons set out below, the defendant's motion is granted in part and denied in part.

## BACKGROUND[1]

The plaintiff began work as a bus operator for the MTA Bus Company in 2006. (First Amended Complaint ("FAC") ¶¶ 9–10.) In 2006, she was diagnosed with disc herniation, which she claims affected her ability to sit, stand, and walk. (FAC ¶ 11.) As a result of her alleged disability, the plaintiff needed an adjustable seat in her assigned bus; with that accommodation, she was able to do her job. (FAC ¶¶ 12–13.)

---

[1] The facts alleged in the first amended complaint are largely consistent with those set out in the initial pleading.

1

In her amended complaint, the plaintiff claims that she spoke up about her need for an adjustable seat every time that she was assigned a bus without an adjustable seat, and that she was "often denied her requested accommodation." (FAC ¶¶ 14–15.)

On March 21, 2014, she was given a bus with a non-adjustable seat. (FAC ¶ 16.) When she complained, a supervisor by the name of "Randy" yelled at her, and said that she was "always having a problem with the seat." (FAC ¶ 16.) Randy told the plaintiff to speak with Chris Tortora, the General Superintendent of MTA Bus Company, who accused the plaintiff of "always having a problem" with her assigned buses. (FAC ¶ 17.) The plaintiff does not contend that the defendant refused to give her a different bus, nor does she allege that she was disciplined as a result of the March 21, 2014 incident.

On April 23, 2014, the plaintiff was given a bus with a seat that was not adjustable in the way she needed. (FAC ¶¶ 18–19.) When the plaintiff told Tortora that she could not drive the bus because of her disability, he "demanded that [the plaintiff] sit behind the wheel of the bus in an aggressive manner." (FAC ¶ 20.) Tortora then instructed the plaintiff to reach under the seat to move it forward, which she was able to do, but which "exacerbated her disability;" as a result, she "ended up on disability leave for one week." (FAC ¶¶ 21, 24.) While the plaintiff complains that the seat's back support and its height could not be adjusted, she does not assert that she was required to drive that bus. (FAC ¶ 21.) The plaintiff does not allege that she was disciplined as a result of the April 23, 2014 incident, nor that she was denied leave when she hurt herself reaching under the seat.

On June 4, 2014, the plaintiff was driving a bus, and smelled what she believed was gas.[2] (FAC ¶ 25.) Believing that there was a leak, she reported the issue to her supervisor, "Benny,"

---

[2] This bus appeared to have the requisite seat.

who said he did not smell anything unusual, and instructed her to drive the bus. (FAC ¶ 25.) According to the plaintiff, she felt "dizzy and lightheaded" after driving the bus, and asked for an ambulance. (FAC ¶ 25.) She had a blood pressure of 190/120, and went to the hospital. (FAC ¶ 25.)

When the plaintiff returned to work almost two weeks later, on June 13, 2014, Tortora called her to his office, and told her that the bus with the reported gas leak had been inspected, and there was "nothing wrong with the bus." (FAC ¶ 26.) Tortora accused the plaintiff of making a false report, and suspended her without pay. (FAC ¶ 26.)

After an arbitration hearing on July 28, 2014, the disciplinary charges against the plaintiff were dismissed. (FAC ¶ 25.) The plaintiff alleges that she "remains out of work without pay while she waits for her formal reinstatement at work." (FAC ¶ 29.) The defendant denies this allegation, and claims she "was not terminated." *See* (Defs.' Mem. at 11.)

The plaintiff filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC").[3] (FAC ¶ 4.) She claims that she received the right-to-sue letter on July 9, 2015; the letter, however, was dated March 31, 2015. (FAC ¶ 4.)

On October 2, 2015, the plaintiff brought this action against the "Metropolitan Transit Authority" and Tortora. The defendants moved to dismiss the initial complaint on March 18, 2016. (ECF No. 11.) I granted the defendants' motion, and dismissed the complaint in its entirety on October 5, 2016. (Oct. 5, 2016 Decision (ECF No. 19).) In that decision, I rejected the defendants' contention that the lawsuit was not timely, but dismissed the complaint because

---

[3] The plaintiff filed a complaint with the New York State Division of Human Rights against the "Metropolitan Transit Authority" and Chris Tortora on August 11, 2014. In an opinion listing the "MTA Bus Company" and "MTA New York City Transit," the New York State Division of Human Rights dismissed the plaintiff's complaint and advised that she had the right to request review by the EEOC. The EEOC adopted the findings of the state agency, copied "MTA New York City Transit," and advised the plaintiff that she had the right to sue, but that suit must be filed within ninety days.

the plaintiff named the wrong defendant, the Metropolitan Transportation Authority (sued as "Metropolitan Transit Authority"); the plaintiff was employed by the MTA Bus Company, and pursuant to New York statute, employees of an MTA subsidiary, like the MTA Bus Company, are not employees of the MTA. (Oct. 5, 2016 Decision at 4–7.)

Thereafter, on December 12, 2016, the plaintiff filed a second motion to amend the complaint, which I granted.[4] (ECF No. 23; Dec. 13, 2016 Order.) The plaintiff filed her amended complaint on December 14, 2016 ("Amended Complaint"). The parties proceeded with discovery.

## DISCUSSION

For purposes of this motion, I assume that the facts alleged in the complaint are true, and draw all reasonable inferences in the plaintiff's favor. *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). Nevertheless, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard requires more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). In the context of a discrimination action, the plaintiff must allege sufficient non-conclusory facts to "nudge" her claim "across the line from conceivable to plausible." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (citations omitted).

---

[4] The plaintiff initially filed a motion to amend the complaint on November 18, 2016, which I denied. (ECF Nos. 21–22.) That proposed amended complaint named Chris Tortora as a defendant, but individuals are not subject to liability under the ADA. *See Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010); *see also Bartone v. Mattera*, No. 15-cv-6362 (MKB), 2016 WL 6537957, at *5 n.10 (E.D.N.Y. Nov. 3, 2016).

4

My review is "limited to the factual allegations in plaintiff['s] [] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff [ ] had knowledge and relied on in bringing suit." *Faconti v. Potter*, 242 F.App'x 775, 777 (2d Cir. 2007).

### A. The Scope of the Plaintiff's Amendment

The defendant argues that the plaintiff "changed the allegations [from her initial pleading] to broaden their scope and materially exaggerate the extent of the alleged discrimination to ward off a foreseeable Rule 12(b)(6) motion." (Defs.' Mem. at 4.) The defendant takes issue with the plaintiff's allegation that she alerted the defendant to her need for an adjustable seat each time she was assigned a bus that did not have one, that she was "often denied her requested accommodation," and her inclusion of "example[s]" of this conduct. (Defs.' Mem. at 4.) The defendant argues that permitting "without permission or consent the amendment of a pleading to allege claims opposite from those initially plead [sic]" leaves "the door . . . open for Plaintiff to fabricate whatever she wants whenever she wants." (Defs.' Mem. at 5.)

While I directed the plaintiff to cure specific defects in the original complaint, I did not *limit* the scope of the amended complaint. (*See* docket Order dated, November 28, 2016). Doing so would have violated "the letter and spirit of the flexible pleading standards . . . ." *Streit v. Bushnell*, 424 F.Supp.2d 633, 640 n. 4 (S.D.N.Y. Mar. 23, 2006). Review of the amended complaint shows that the relatively minor adjustments to the original complaint are neither "blatant" nor "directly contradictory" to her original complaint. *See Kermanshah v.*

5

*Kermanshah*, 580 F.Supp.2d 247, (S.D.N.Y. Aug. 11, 2008) (internal citation and quotation marks omitted).

Accordingly, I reject the defendant's contention, and use the plaintiff's Amended Complaint to address the remaining arguments.

### B. Americans with Disabilities Act Claims

To establish a prima facie case of discrimination under the ADA, a plaintiff must establish that: (1) the employer is subject to the ADA; (2) the plaintiff suffers from a disability within the meaning of the ADA; (3) the plaintiff was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of the disability. *E.g., Vale v. Great Neck Water Pollution Control Dist.*, 80 F.Supp.3d 426, 433 (E.D.N.Y. Jan. 20, 2015). Here, the defendant argues that the plaintiff does not satisfy the second and fourth prongs, because she does not suffer from a disability within the meaning of the ADA, and did not suffer an adverse employment action because of her alleged disability. (Defs.' Mem. at 9.) I agree that the plaintiff has not demonstrated that she is disabled within the meaning of the ADA, and decline to address whether the plaintiff suffered an adverse employment action because of her alleged disability.

To substantiate a disability within the meaning of the ADA, the plaintiff must demonstrate: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1); *see also Delgado v. Triborough Bridge and Tunnel Authority*, 485 F.Supp.2d 453, 459 (S.D.N.Y. Apr. 26, 2007). Here, the plaintiff does not allege a record of any impairment, nor does she plausibly allege that she was "regarded

6

as having such an impairment."[5] The remaining question is whether the plaintiff has plausibly pled a physical impairment that substantially limits one or more of her major life activities.

Major life activities are those that are "of central importance to daily life," and have come to include, among other things, standing, sitting, and walking. *See Levine v. Smithtown Cent. School Dist.*, 565 F.Supp.2d 407, 422 (E.D.N.Y. July 14, 2008); *McDonald v. City of New York*, 786 F.Supp.2d 588, 607 (E.D.N.Y. Apr. 6, 2011); *Skinner v. City of Amsterdam*, 824 F.Supp.2d 317, 327 (S.D.N.Y. Mar. 30, 2010). To determine whether a limitation is "substantial," courts consider "the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long term impact of or expected long term impact of or resulting from the impairment." 29 C.F.R. § 1630(2)(j)(2); *see also Levine*, 565 F.Supp.2d at 422; *Casseus v. Verizon N.Y., Inc.*, 722 F.Supp.2d 326, 347 (E.D.N.Y. July 9, 2010). The only information that the plaintiff provides about her condition is that "[i]n 2006, [the plaintiff] was diagnosed with a disc herniation throughout her back which impacts her ability to sit, stand, and walk," and that she requires adjustable seats to "limit the pain she experiences in her back." (FAC ¶¶ 11, 12.) Although the plaintiff refers to major life activities – sitting, standing, and

---

[5] The plaintiff offers one sentence that might be construed to claim that her employers regarded her as having an impairment: "From 2006 through present, *despite her supervisor's knowledge of her disability* and need for accommodation, [the plaintiff] has been assigned to busses that do not have adjustable seats several times." (FAC ¶ 14) (emphasis added). Even construing the plaintiff's allegations liberally, this single, conclusory allegation cannot plausibly support a claim that the defendant regarded the plaintiff as having a disability. *See Kelly v. N.Y. State Office of Mental Health*, 200 F.Supp.3d 378, 394-95 (E.D.N.Y. Aug. 9, 2016) (under the "regarded as disabled prong – a plaintiff must allege that he has been subjected to an action prohibited by the ADA . . . because of an actual or perceived impairment that is not both transitory and minor") (internal citations and quotation marks omitted); *Horsham v. Fresh Direct*, 136 F.Supp.3d 253, 262-63 (E.D.N.Y. Sept. 28, 2015). And in fact, the Amended Complaint appears to suggest that the plaintiff's employer did *not* regard her as being disabled. For instance, on the two occasions that the plaintiff describes, the plaintiff told her supervisors that she needed a bus with adjustable seats, and both responded that the plaintiff was "always having a problem" with the seats; in response, the plaintiff "explained that she had a back injury." (FAC ¶¶ 16, 17.) The plaintiff does not allege that her supervisors referred to her disability – indeed, the plaintiff maintains that she had to remind them about her condition. (FAC ¶¶ 16, 17.) Further, the plaintiff's assertion that she "ended up on disability leave for one week" does not establish that she was regarded as having a disability, since the plaintiff does not allege that her injury was not "transitory and minor". *See Kelly*, 200 F.Supp.3d at 395 (internal citations and quotation marks omitted). As such, the complaint does not plausibly plead that her employer regarded her as having an impairment under the ADA.

walking – she does not put forth any factual support to demonstrate that her alleged disability has substantially limited her ability to perform these activities. Merely declaring that these major life activities are "impact[ed]" and that adjustable seating "limit[s] the pain" says nothing about the severity, duration, or the long-term impact of the disability. *See Kelly v. N.Y. State Office of Mental Health*, 200 F.Supp.3d 378, 392-93 (E.D.N.Y. Aug. 9, 2016); *but see Dooley v. Jetblue Airways Corp.*, No. 15-cv-1356, 2015 WL 9261293, at *5 (2d. Cir. 2015) (plausibly alleging disability under the ADA by stating that the plaintiff "suffered a fracture and also damage to the ulnar and median nerve distributions, resulting in *temporary total disability* . . . and, ultimately, *permanent partial disability* with limitations on lifting and repetitive motion") (emphasis added). Without more, the plaintiff's bare statement of her disability does not "nudge . . . the claim[] across the line from conceivable to plausible." *Id.*

However, the plaintiff may amend the Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).[6]

### C. Hostile Work Environment Claim

The plaintiff additionally alleges that she was subjected to a hostile work environment. The standard, however, "is a demanding one, and a plaintiff must establish that the alleged harassment was offensive, pervasive, and continuous enough to create an abusive working environment." *Monterroso v. Sullivan & Cromwell, LLP*, 591 F.Supp.2d 567, 584 (S.D.N.Y.

---

[6] In light of my determination that the plaintiff has not sufficiently pled that she is disabled within the meaning of the ADA, I decline to consider whether she was subject to adverse employment actions because of her disability. (Defs.' Mem. at 10-11.) Further, although not raised in the defendant's motion to dismiss, I decline to address whether the plaintiff has established her claim that the defendant failed to accommodate her disability, because that claim is partly predicated on whether the plaintiff is disabled within the meaning of the ADA. *See McMillan v. City of New York*, 711 F.3d 120, 125-26 (2d Cir. 2013). Similarly, the plaintiff's claim that the defendant "fail[ed] to engage in the interactive process" is related to her failure to accommodate claim. *See McBride v. BIC Consumer Products Mfg. Co.*, 583 F.3d 92, 100 (2d Cir. 2009) (discussing the interplay between a failure to accommodate claim and an allegation of a failure to engage in an interactive process); *also see* (Pls.' Opp. Mem. at 14.) As such, I additionally decline to address this issue.

Oct. 28, 2008). Evaluating whether a hostile work environment exists under the ADA requires an assessment of the totality of circumstances and includes consideration of the "frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interefere[d] with [the plaintiff's] work performance." *Giambattista v. American Airlines, Inc.*, F.Supp.3d 284, 294-95 (E.D.N.Y. Mar. 20, 2014).

Here, the plaintiff cites two incidents in connection with her allegations. First, she claims that she was assigned a bus on March 21, 2014, that did not have adjustable seats. (FAC ¶ 16.) When she told her supervisor, Randy, that she could not take that bus, he "yelled at her, expressing that she is 'always having a problem with the seat.'" (FAC ¶ 16.) He then told the plaintiff to speak with Tortora, who also "yelle[d]" that the plaintiff was "'always having a problem' with the busses to which she was assigned." (FAC ¶ 17.)

The second instance to which the plaintiff refers happened about a month later, on April 23, 2014, when Tortora assigned the plaintiff a bus with a seat that she did not believe was adjustable. (FAC ¶ 20.) When the plaintiff informed Tortora of the seat issue, he "demanded that [the plaintiff] sit behind the wheel of the bus in an aggressive manner . . . [and] had [her] bend over and reach under the seat and [ ] move [it] forward," which the plaintiff was able to do. (FAC ¶ 20.)

While yelling in the workplace may not be particularly pleasant or even appropriate, these isolated and relatively insignificant incidents do not establish a prima facie case of a hostile work environment. "The Second Circuit has repeatedly held that isolated, minor acts or occasional episodes do not warrant relief." *Lewis v. Erie County Medical Center Corp.*, 907 F.Supp.2d 336, 348 (S.D.N.Y. Nov. 1, 2012) (also citing *Kaytor v. Elec. Boat Corp.*, 609 F.3d

9

537, 547 (2d Cir. 2010) for the proposition that "'[i]solated incidents . . . will not suffice to establish a hostile work environment unless they are extraordinarily severe'") (internal citations and quotation marks omitted); *Giambattista*, F.Supp.3d at 294-95 (dismissing hostile work environment claim where plaintiff's coworkers "made offensive quips about her perceived disability, including calling her 'crazy' and implying that she should be taken away by psychiatrists"). Moreover, none of the comments to which the plaintiff objects seem to have anything to do with the plaintiff's alleged disability, and there is no suggestion that the comments, even if delivered at high volume, interfered with the plaintiff's ability to perform her job, or that the allegedly hostile behavior was pervasive or frequent.

In short, the plaintiff has not supported her claim that she was subjected to a hostile work environment. I therefore dismiss this claim with prejudice.

### D. Retaliation Claim

The ADA prohibits an employer from retaliating against an employee for engaging in an activity protected under its provisions. *See Pediford-Aziz v. City of New York*, 170 F.Supp.3d 480, 485-486 (E.D.N.Y. Mar. 17, 2016). To establish a claim of retaliation, a plaintiff must show: (1) that she was engaged in an activity protected by the ADA; (2) that the employer was aware of this activity; (3) that the employer took adverse employment action against her; and (4) that a causal connection exists between the alleged adverse action and the protected activity. *Id.* at 485. "Making requests for reasonable accommodations for a disability is protected activity within the contemplation of the statute." *Vale*, 80 F.Supp.3d at 439 (internal citations and quotation marks omitted). Further, it is not necessary for a plaintiff to allege that she is actually disabled within the meaning of the ADA to pursue a retaliation claim. *Id.*; *Sherman v. County of Suffolk*, 71 F.Supp.3d 332, 352 (E.D.N.Y. December 29, 2014) ("prevailing on a disability

discrimination claim under the ADA is not a prerequisite to prevailing on a retaliation claim under the ADA").

The plaintiff claims that the defendant retaliated against her because of her "continued need for accommodations for her disability." (FAC ¶ 26.) Specifically, the plaintiff contends that on June 4, 2014, approximately two months after her April 23, 2014 complaint and request for a bus with adjustable seats, "she starting smelling what she believed to be a gas leak" and asked her supervisor to inspect her bus. (FAC ¶ 25.) The supervisor "indicated he did not smell anything and directed [the plaintiff] to run her route with the bus []." (FAC ¶ 25.) The plaintiff was "dizzy and light headed" by the end of her shift, and asked her "command center" to call her an ambulance, which they did. (FAC ¶ 25.) Because of the plaintiff's blood pressure, the EMTs took her to the hospital. (FAC ¶ 25.) After the plaintiff came back to work on June 13, 2014, Tortora called her into his office and told her that the allegedly defective bus had been inspected, and there was no gas leak. (FAC ¶ 26.) Tortora "accused [the plaintiff] of making a false report . . . [and] suspended [her] without pay on the grounds that she allegedly committed fraud." (FAC ¶¶ 26, 27.) Thereafter, following "multiple levels of disciplinary hearings" and an arbitration hearing, the charges against the plaintiff were dismissed. (FAC ¶ 28.) The plaintiff further alleges that she "remains out of work without pay while she waits for her formal reinstatement at work." (FAC ¶ 29.) The plaintiff claims that the defendant suspended her without pay, not because she lied about the gas leak, but as a pretext to "retaliat[e]" against her for her requests for reasonable seat accommodations. (FAC ¶ 26.) While the issue is close, I find that the plaintiff has put forth a minimally plausible claim to raise an inference of retaliation.

Suspension without pay is "sufficient to constitute adverse employment action" in an ADA retaliation claim, *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir.

2001); *Campbell v. N.Y. City Transit Authority*, 93 F.Supp.2d 148, 169 (E.D.N.Y. Mar. 26, 2015), therefore, the plaintiff has sufficiently alleged that she suffered an adverse employment action.

With respect to causation, the plaintiff must establish a "but-for" connection between the protected activity – here the repeated requests for buses with adjustable seats – and the adverse employment action – the plaintiff's suspension without pay for allegedly filing a false report. *See Riddle v. Citigroup*, 640 Fed.Appx. 77, 79 (2d Cir. 2016) (summary order stating, "the plaintiff must allege that the retaliation was the 'but-for' cause of the employer's adverse action . . . . [i]t is not sufficient for the retaliation to have been 'a substantial or 'motivating' factor in the employer's decision") (internal citations and quotation marks omitted); *see also Pediford-Aziz*, 170 F.Supp.3d at 486. A causal connection can be demonstrated through circumstantial evidence, including, a "close temporal proximity between the protected activity and the adverse action." *Id.* (internal citations omitted); *see also Vale*, 80 F.Supp.3d at 440. Moreover, there is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship." *E.g., Vale*, 80 F.Supp.3d at 441 (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)).

Viewing the complaint in a light most favorable to the plaintiff, and construing all allegations as true, the defendant's action – accusing the plaintiff of making a false report and subsequently suspending her without pay – raises a barely plausible claim of a pretext for retaliation – that the defendant suspended her not because of the gas leak story, but because she kept demanding adjustable seats.

The defendant argues that the approximately two-month passage of time between the plaintiff's request for accommodation and the adverse employment action is not sufficiently

12

contemporaneous to support an inference of retaliation, and further, that temporal proximity alone does not satisfy the plaintiff's burden. I disagree. Other courts in this district have found that the passage of a few months between the protected activity and the alleged adverse employment action does not bar a retaliation claim. *See, e.g., Infantolino v. Joint Industry Bd. of Elec. Industry*, 582 F.Supp.2d 351, 359-60 (E.D.N.Y. Oct. 1, 2008) (the plaintiff established a prima facie retaliation claim despite a two-month lapse between the protected activity and an adverse action.); *Pediford-Aziz*, 170 F.Supp.3d at 486 (plausible inference of retaliation when adverse action began eight months after the protected activity).

Moreover, temporal proximity alone – between a request for an accommodation and an adverse employment action – can give rise to a *prima facie* inference of retaliation. *See, e.g., Abrams v. Dept. of Public Safety*, 764 F.3d 244, 254 (2d Cir. 2014) (quoting *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010), which states, "temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation . . . ."); *Magnotti v. Crossroad Healthcare Management*, LLC, 126 F.Supp.3d 301, 313 (E.D.N.Y. Sept. 3, 2015) (a causal connection "may be demonstrated as part of a prima facie case simply by temporal proximity between the protected activity and the adverse action") (internal citations omitted).

Given the relatively close temporal connection between the plaintiff's requests for accommodation and her subsequent suspension without pay, I find that the plaintiff has plausibly raised an inference of retaliation. Therefore, I deny the defendant's motion to dismiss the plaintiff's retaliation claim.

## CONCLUSION

Accordingly, I conclude the following: (1) the defendant's motion with respect to the plaintiff's hostile work environment claim is granted and dismissed with prejudice; (2) the defendant's motion to dismiss the plaintiff's retaliation claim is denied; and (3) while I dismiss the plaintiff's discrimination claim pursuant to the ADA, I do so without prejudice, and allow the plaintiff thirty days from this order to submit a final, amended complaint pursuant to Rule 15(a)(2), to establish this claim.

**SO ORDERED.**

s/ AMD
Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
August 3, 2017